UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JENNIFER DOUGHERTY,

                    Plaintiff,                          **REPORT AND**
                                                        **RECOMMENDATION**
        -against-                              19-CV-3961 (JMA) (ARL)

FERRARI EXPRESS, INC., VINCENT ROSSI,
individually, and LAWRENCE MELILLI,
individually**,**
                          Defendants.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Plaintiff, Jennifer Dougherty ("Plaintiff"), brings this action for sex discrimination, sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the New York State Human Rights Law ("NYSHRL"), Executive Law § 296 (1), (6), (7), against Ferrari Express, Inc. ("Ferrari Express"), Vincent Rossi, individually, and Lawrence Melilli, individually (collectively "Defendants").  Before the Court, on referral from District Judge Azrack, is Defendants Ferrari Express and Melilli's (collectively, "Ferrari Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56, as well as Defendant Rossi's motion for summary judgment.  ECF Nos. 76 & 79. For the reasons set forth below, the Court respectfully recommends that the Ferrari Defendants' motion be granted in part, and denied, in part and Defendant Rossi's motion be granted, in part and denied in part.

**BACKGROUND**

    **I.**    **Factual Background**

    The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

### A.    The Parties

Ferrari Express is a domestic corporation which operates a jewelry shipping business in New York, Florida, California, Colorado, Nevada and overseas.  Ferrari Defs. Rule 56.1 Stmt. ¶ 1.  At all relevant times, Dario Ferrari was, and is, the President of Ferrari Express and Stephen Grief was the Treasurer or CFO.   Rossi Rule 56.1 Stmt. ¶¶ 2, 6.  Defendant Melilli, an employee of Defendant Ferrari Express, has held the title of Vice-President of Ferrari Express for the past fifteen years.  Ferrari Defs. Rule 56.1 Stmt. ¶ 70.

Defendant Vincent Rossi was hired by Defendant Ferrari Express to work as an "Import Entry Clerk" in 1999.  *Id*. at ¶ 54.  He was promoted to logistics manager in 2002. In his capacity as logistics manager, he handled the receiving of merchandise, inventory control, and redistribution.  Defendant Rossi was promoted to Import manager at the beginning of 2017 and was then responsible for customer regulations, import functions, and the daily operations of the import department.  *Id*. at ¶ 55.  Defendant Rossi was also required to confirm the workload, answer questions relating to the customers, and ensure that the workflow was properly balanced amongst the department. *Id*. at ¶ 56.

Plaintiff Jennifer Dougherty was hired by Defendant Ferrari Express to work as a "Air Import Agent" at the 215 Mill Street, Lawrence, New York location.   Ferrari Defs. Rule 56.1 Stmt. ¶ 21.  She applied for the job in April 2018 on indeed.com.  *Id*. at ¶ 22.  Defendant Rossi initially reached out to Plaintiff and scheduled an interview for later the same week.  *Id*. at ¶ 23. During the interview, Defendant Rossi asked Plaintiff about her qualifications and experience. Pl. Rule 56.1 Stmt. ¶ 7.  After the initial interview, Defendants Rossi and Melilli scheduled a

second interview with Plaintiff.  Ferrari Defs. Rule 56.1 Stmt. ¶ 24.  During this second interview, which Defendant Rossi also attended, Plaintiff inquired about the compensation for the position and tried to negotiate for a higher pay rate than the $16 to $19 advertised in the job posting.  Pl. Rule 56.1 Stmt. ¶ 10.  Shortly after, Defendant Rossi called Plaintiff and offered her the Air Import Agent position with a pay rate of $23/hour.  *Id*. at ¶ 11.  Plaintiff testified that she was never informed by Defendant Rossi, Defendant Melilli, or anyone at Defendant Ferrari Express that overtime was mandatory when hired, only that it was available.  *Id*. at ¶ 85.[1]  She was ultimately hired on May 2, 2018.  Ferrari Defs. Rule 56.1 Stmt.  ¶ 21.  On May 9, 2018, Plaintiff received an email from Human Resources Director, Yesenia Ruiz, which included Ferrari Express' employee handbook.  *Id*. at ¶ 26.  Plaintiff was instructed to read the employee handbook.  *Id*. at ¶ 28.  On May 9, 2018, Plaintiff acknowledged in writing that she had read Ferrari Express' Employee Handbook, which included Ferrari Express' anti-harassment policy and complaint procedures.  *Id*. at ¶ 30.

Ferrari Express HR Manager Ruiz introduced Plaintiff to the import team via email on or about May 10, 2018.  *Id*. at ¶ 32.  Employees of the import department had a regular 40-hour schedule with 10 to 12 hours of overtime available only if there were heavy loads. The heaviest loads were usually on Fridays and Mondays due to consolidations as a result of shipping from Europe arriving at the warehouse in the weekends.  *Id*. at ¶ 73.  The import department employees received pre-alerts from overseas offices, being in contact with local customers pertaining to their shipments, and set up the documentation for the Import Department, for the brokerage division of the Import Department; process the entries for customs clearance.  *Id*. at ¶ 90.

---

[1] While certain employees wanted to (and did) work overtime, Plaintiff did not always work overtime when requested, and was not expected or required to.  *Id*. at ¶ 87.

3

When Plaintiff began to work at Ferrari Express her co-worker Cohen Laureano was asked to help her familiarize with the job tasks including printing pre-alerts, what to do with the paperwork in order for the vault team to pick up the freight from the airline and transfer documents to the import employee who handled AMS duties, etc. but at no time was Cohen Laureano Plaintiff's supervisor. *Id*. at ¶ 76.

On November 8, 2018, Plaintiff sent Defendant Rossi a text message informing him that she would not be able to make it to work that day. Pl. Rule 56.1 Stmt. ¶ 109. On November 9. 2018, Plaintiff requested medical leave pursuant to a doctor's note as treatment for anxiety, and Defendant Ferrari Express granted Plaintiff's request. Ferrari Defs. Rule 56.1 Stmt. ¶ 46. By email dated November 21, 2018, counsel for Plaintiff informed Defendant Ferrari Express that Plaintiff would not be returning to work as of November 26, 2018. *Id*. at ¶ 47.

### B.    **Discriminatory Conduct**

Plaintiff's claims of sexual harassment in this action flow from a series of interactions between Plaintiff and Defendant Rossi. On May 2, 2018, shortly after Plaintiff accepted the offer of employment but before her start date Defendant Rossi sent Plaintiff a text message inviting her to go out with him "one night" to Swirls'n'Twirls, a frozen yogurt store that he owns in Massapequa, New York. Pl. Rule 56.1 Stmt. ¶ 15. Plaintiff never met Defendant Rossi at his yogurt store. *Id*. at ¶ 17. On May 3, 2018, Defendant Rossi sent Plaintiff a text message stating, "I hope you don't get upset by me saying his to you, but you have a certain energy that surrounds you that brings out a real positive vibe. You bring an element to the office that feels good." *Id*. at ¶ 20. Plaintiff replied, "Thank you for saying that! No[t] upset at all. … so nice of you to say." *Id*. at ¶ 21. Defendant Rossi then proceeded to send Plaintiff another text message, stating,

4

"No disrespect to your boyfriend but your smile is [contagious]." *Id*. at ¶ 23.  Plaintiff replied, "Thank you." *Id*. at ¶ 24.  On May 8, 2018, while looking at Plaintiff through his office window, Defendant Rossi sent Plaintiff a text message stating, "Its good to see you today." *Id*. at ¶ 25.

On May 10, 2018, following an announcement of Plaintiff's hiring, Defendant Rossi sent Plaintiff an email, stating, "I would like to take this opportunity to welcome you to the Ferrari team!" *Id*. at ¶ 27.  Defendant Rossi then proceeded to send Plaintiff another email, stating, "If your boyfriend wouldn't get offended, I would take you out for a welcome dinner ????." *Id*. at ¶ 28.  Plaintiff replied to this email stating, "That's very sweet of you." *Id*. at ¶ 29.  Plaintiff claims that each of these inactions made her uncomfortable, however Defendants dispute this assertion, claiming Plaintiff never informed Defendant Rossi or anyone else that the communications were making her uncomfortable.

On May 11, 2018, just one day after the announcement she had joined the department, Defendant Rossi texted Plaintiff, "U miss me?" *Id*. at ¶ 31.  Plaintiff did not respond. *Id*. at ¶ 32. Two hours later, Defendant Rossi sent Plaintiff another text message, stating, "Still missin me?" *Id*. at ¶ 33.  Plaintiff again did not respond. *Id*. at ¶ 34.  On May 16, 2018, Defendant Rossi took Plaintiff to the U.S. Customs' Office to show her the "process" of Defendant Ferrari Express' business. *Id*. at ¶ 35.  That same day, after their trip to the U.S. Customs' Office, Defendant Rossi sent Plaintiff a text message stating, "I like spending time and getting to kn[o[w u Always …" *Id*. at ¶ 36.

On May 23, 2018, Plaintiff was at work when she sent Defendant Rossi a text message asking where he was to let him know that she was leaving the office early, and because she wanted to confirm whether she had to come into work early the next day. *Id*. at ¶ 37.  Defendant Rossi replied, "Warehouse. Why u wana (sic) kiss me goodnight?" *Id*. at ¶ 38.  Plaintiff

responded, "No your office light was on." *Id*. at ¶ 41. Plaintiff also testified that she had never

kissed Defendant Rossi prior to (or after) receiving this text message. *Id*. at ¶ 40. Defendant

Rossi then asked Plaintiff to meet him by Defendant Ferrari Express' loading dock in the

company warehouse. *Id*. at ¶ 42. The parties dispute the events which transpired when Plaintiff

went to meet Defendant Rossi on the loading dock. Plaintiff claims Defendant Rossi tried to kiss

her, while Defendant Rossi denies any such encounter occurred. *Id*. at ¶ 48.

According to Plaintiff, following the interaction between Plaintiff and Defendant Rossi

on the loading dock in late May – less than one month after Plaintiff was hired - , "Plaintiff felt

obligated to work more overtime, including on weekends, and did up until the end of her

employment." *Id*. at ¶ 89. This assertion is disputed by Defendants who argue that pursuant to

the terms of her employment, Plaintiff was always required to work overtime as needed. *Id*. The

parties agree, however, that near the end of May 2018, Ferrari Express serviced a jewelry trade

show in Las Vegas which increased the department workload. Ferrari Defs. Rule 56.1 Stmt. ¶ 93.

On May 29, 2018, Defendant Rossi sent Plaintiff a text message stating, "U miss me this

weekend?" Plaintiff replied, "NO!" Pl. Rule 56.1 Stmt. ¶ 49. On June 1, 2018, Defendant

Rossi sent Plaintiff a text message asking if the weather was "good" at her brother's wedding

ceremony. *Id*. at ¶ 50. Plaintiff did not respond. *Id*. at ¶ 51. On or about June 7, 2018,

Defendant Rossi sent Plaintiff a text message stating, "If u have things to do then come back. If

not then ill f u tomorrow. C u Not f u lolol." *Id*. at ¶ 52. Plaintiff did not respond. *Id*. at ¶ 53.

Later, Defendant Rossi sent Plaintiff another text message stating, "Oh so then I can't f(uck) u?"

*Id*. at ¶ 54.

On or about September 18, 2018, Defendant Rossi sent Plaintiff a text message stating,

"You look really good today. Are u trying to tempt me to attack u?" *Id*. at ¶ 72. Plaintiff replied,

"Stop it!" *Id*. at ¶ 73.  On or about September 26, 2018, Dougherty exchanged emails with Defendant Rossi, sending him an image that would read "The JERK store called, they're running out of you!"  Ferrari Defs. Rule 56.1 Stmt. ¶ 43.

Plaintiff also claims that others in the workplace made comments of a sexual nature in her presence.  According to Plaintiff  "Yesenia Ruiz-Goris had also engaged in sexually explicit conversations in the workplace herself, including commenting that she wanted to get 'freaky' and use a 'strap-on' with her wife; . . . Defendant Melilli (the Company's Vice President) also engaged in sexually explicit conversations in the workplace, including on one occasion when he joked about wanting to grab Netta Cohen-Laureno's breasts and on another occasion we he laughed at one of Defendant Rossi's joke about Plaintiff's son's friends wanting to 'jerk-off' to her;  and Defendant Melilli also once overhear Defendant Rossi tell Plaintiff that her [chair] broke because her 'ass [was] fat' and she could sit could 'sit on [his] lap' and did nothing in response," citing her own deposition testimony at Bracero Dec. Ex. A at 49, 55-57, 69, and 90-91, Bracero Dec. Ex. B at 184-185, 198-199, 217-218.  Each of these assertions are denied by Defendants.

On November 5, 2018, Plaintiff texted her boyfriend that Defendant Rossi "makes her sick." Pl. Rule 56.1 Stmt. ¶ 96.  According to Plaintiff this text was prompted by Defendant Rossi responding to Plaintiff's request for a new chair by stating, "Maybe it wouldn't be broken if your ass wasn't so fat . . . You can have my chair if you sit on my lap," and motioned toward his groin area while doing so.  Defendant Rossi does not recall making such as statement.  On November 7, 2018, Defendant Rossi text messaged Plaintiff, "I would love to fuck u. I would. And trust me you would love having my dick inside u. Lol. And I LOVE eating pussy." *Id*. at ¶ 97.  Plaintiff replied, "Shut up." *Id*. at ¶ 98.  Defendant Rossi, continued, "Love sucking on the

clit and lickin it and fingering the pussy while I eat it. I would def eat your pussy until u came on my face." *Id*. at ¶ 99. Plaintiff replied, "I need to get work done." *Id*. at ¶ 100. During this same text exchange, in one continuous thread, Defendant Rossi further stated: "And trust me if done right ill have u cumin in less than 5 min. I will eat the shit out of u. You ever have ur ass licked? Put u in a nice warm bath and lick ur ass while rubbing ur clit. Is your pussy hot right now? Even if you picture me laying you down and slowly kissing your neck…running my tongue down your body and gently biting your nipples and softly sucking on them. Then continue my way down running my tongue on you stomach, makin my way to your hot wet pussy.. But even then I run my tongue along your pussy and tease you…licking your thighs. Making my way back to your pussy ad begin to suck on your lips and playing with your clit. Finally inserting my fingers in and out of your pussy as I bury my tongue deep inside u and suck your clit as I watch you arch your back, playing with your tits until you release your cum into my mouth as I feel your body shaking. I would love to do that to u." *Id*. at ¶ 101. Plaintiff did not respond. *Id.* at ¶ 102. Defendant Rossi then asked Plaintiff to send him a "sexy pic" of herself. *Id.* at ¶ 103. Plaintiff replied, "No way … I'm not doing that." *Id.* at ¶ 104. Defendant Rossi then wrote, "Just show me. Will you take one tonight for me?" *Id.* at ¶ 105. Plaintiff did not respond. *Id.* at ¶ 106.

On November 8, 2018, Plaintiff sent Defendant Rossi a text message informing him that she would not be able to make it to work that day. *Id.* at ¶ 109. Defendant Rossi replied, "Ok keep me posted[.] Feel better." *Id.* at ¶ 110. Later that evening, Defendant Rossi sent Plaintiff a text message stating, "I need to know if ur comin[g] [to work] tomorrow." *Id.* at ¶ 111. Plaintiff replied, "As of now No, I'm still sick, I'll let you know when I am feeling better." *Id.* at ¶ 112. The next day, on November 9, 2018, Plaintiff was still experiencing anxiety relating to

8

Defendant Rossi's harassment, and sought treatment from her doctor, Irina Kolotinakaya, M.D. *Id.* at ¶ 113. Ms. Kolotinakaya gave Plaintiff a doctor's note excusing her from work for the following two (2) weeks, until November 23, 2018, pending an evaluation from a therapist. *Id.* at ¶ 114. That afternoon, Plaintiff emailed the doctor's note to Human Resources. *Id.* at ¶ 115. However, later that day, after Plaintiff had submitted her medical leave request to Human Resources and stopped responding to Defendant Rossi's text messages, Defendant Rossi sent Plaintiff a text message stating, "Your lack of communication with me is going to result in a write up and 2 day suspension with no pay." *Id.* at ¶ 116.

The next day, on November 10, 2023, Defendant Rossi sent Plaintiff a text message stating, "If I don't hear back from u by monday im gonna pass by or send someone from [Defendant Ferrari Express] by your house to sure ur okay." *Id.* at ¶ 117. Over the next several days, Defendant Rossi called Plaintiff approximately ten (10) times, despite the fact that she was out on medical leave. *Id.* at ¶ 118. Plaintiff alleges that on or about November 26, 2018, for her own mental health and well-being, and as a result of Defendants' ongoing harassment, Plaintiff was constructively discharged from her employment. *Id.* at ¶ 120. The Ferrari Defendants' response to this assertion is that it is "undisputed as to the statement, disputed as to the veracity of it."

Following Plaintiff's constrictive discharge, Ferrari Express Human Resources Department conducted an investigation into the allegations raised by Plaintiff, which included interviews with witnesses Salvina Marchisello, Vincent Rossi, Lawrence Melilli, Netta Cohen-Laureano, Dolkas "Margie" Cepeda, and Patricia Poe. *Id.* at ¶ 121. This internal investigation confirmed, that Defendant Rossi invited Plaintiff out to his yogurt store, to dinner, and sent her inappropriate text messages, which included asking Plaintiff to kiss him good night, asking

Plaintiff to send him a "sexy pic," asking to see Plaintiff's black lace thong, telling Plaintiff that he would "love to fuck [her]," that she would "love having [his] dick inside [her]," that "[he] would [ ] eat [her] pussy until [she] came on [his] face," and that he would "Put [her] in a nice warm bath and lick [her] ass while rubbing [her] clit," among others. *Id.* at ¶ 122. Lastly, the internal investigation concluded that "statements from Defendant Rossi confirm that there was inappropriate interaction." *Id.* at ¶ 124.

According to Plaintiff, from her first day of employment at Ferrari Express, Plaintiff felt she could not receive any form of protection against sexual harassment because of the long working relationship among the company's employees. Ferrari Defs. Rule 56.1 Stmt. at ¶ 34. On one occasion Plaintiff showed to Netta Cohen-Laureano a text message she had received by Rossi in reference to an invitation to dinner. *Id.* at ¶ 39. The Ferrari Defendants contend that "while employed by Ferrari Express, Plaintiff did not complain of Rossi's alleged harassment of her to the Ferrari Express Haman Resources Department, to Melilli, Rossi's supervisor, or to any officer of Ferrari Express" citing to the deposition testimony of Plaintiff as well as Dario Ferrari, and Defendant Rossi. *See* Ferrari Defs. Rule 56.1 Stmt ¶ 14. Plaintiff disputes this contention, while acknowledging that "Plaintiff did not report Defendant Rossi's harassment to Yesenia Ruiz-Goris or Defendant Melilli." Pl. Resp. to Ferrari Defs. Rule 56.1 Stmt. ¶ 14.

## II.    Procedural History

Plaintiff filed her Complaint on July 9, 2019, after receiving a right to sue letter from the Equal Employment Opportunity Commission on May 15, 2019. ECF No. 1. Plaintiff brings claims against Defendant Ferrari Express for sex discrimination under Title VII (First Cause of

Action) and retaliation under Title VII (Second Cause of Action).  Included in Plaintiff's claim

for sex discrimination is Plaintiff's claim for hostile work environment.  Compl. ¶¶ 93-94.

Additionally, Plaintiff asserts claims against all Defendants for sex discrimination and retaliation

under the NYSHRL (Third and Fourth Causes of Action) and aiding and abetting under state law

(Fifth Cause of Action).  Plaintiff's claim for sex discrimination under NYSGRL includes claims

for quid pro quo harassment and hostile work environment.  Compl. ¶¶ 98-101.

On September 26, 2023, the Ferrari Defendants moved for summary judgment on each of

Plaintiff's claims.  ECF No. 76.  On September 28, 2023, Defendant Rossi separately moved for

summary judgment on each of the claims asserted against him. ECF No. 79.  Plaintiff has

opposed both motions.  ECF Nos. 77, 80.  By order dated April 16, 2024, Judge Azrack referred

both motions to the undersigned for a report and recommendation.

## DISCUSSION

### I. Standards of Law

"'Summary judgment is appropriate where there are no genuine disputes concerning any

material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi*

*v. Town of Hempstead*, No. 10 CV 1928, 2012 U.S. Dist. LEXIS 133281, 2012 WL 4172010, *6

(E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir.

1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)).  In

deciding a summary judgment motion, the district court must resolve all ambiguities and draw all

reasonable inferences in the light most favorable to the opposing party.  *See Castle Rock Entm't,*

*Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998).  If there is evidence in the

record as to any material fact from which an inference could be drawn in favor of the non-

movant, summary judgment is unavailable.  *See Holt v. KMI-Continental, Inc*., 95 F.3d 123, 129

(2d Cir. 1996).

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).  When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not rest upon conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed.  *R.G. Grp., Inc. v. Horn & Hardart Co*., 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp*., 585 F.2d 31, 33 (2d Cir. 1978));  *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) ("there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim") (quoting *Celotex*, 477 U.S. at 322); *E.E.O.C. v. Mavis Discount Tire, Inc.,* 129 F. Supp. 3d 90, 102 (S.D.N.Y. 2015) ("the nonmoving party must 'set out specific facts showing a genuine issue for trial' using affidavits or otherwise, and cannot rely on the 'mere allegations or denials' contained in the pleadings).  A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

However, "[t]he Second Circuit has 'explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment [in employment discrimination cases] because the ultimate issue to be resolved in such cases is the employer's intent, an issue not

particularly suited to summary adjudication.'" *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15 CV 2343 PKC VMS, 2019 U.S. Dist. LEXIS 167956, 2019 WL 4752018, at *13 (E.D.N.Y. Sept. 29, 2019)(citing *Thompson v. Kaufman's Bakery, Inc.,* No. 03-CV-340 (WMS), 2005 U.S. Dist. LEXIS 22431, 2005 WL 643433, at *3 (W.D.N.Y. March 16, 2005)). Nevertheless, "summary judgment remains appropriate in discrimination cases, as 'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation.'" *Singh v. New York State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 233 (W.D.N.Y. 2012) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

## II.    Plaintiff's Sex Discrimination Claims pursuant to Title VII and NYSHRL

Plaintiff asserts claims for sex discrimination against Ferrari Express pursuant to Title VII and all Defendants pursuant to NYSHRL.  Compl. ¶¶ 93- 94, 98-101.   Plaintiff alleges that her claim of discrimination includes claims that Ferrari Express violated Title VII by discriminating against Plaintiff because of her sex, together with creating a hostile work environment, retaliation, and constructive discharge.[2] *Id*. at ¶ 94.  Similarly, Plaintiff alleges that all Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, together with sexual harassment, quid pro quo sexual harassment, creating a hostile work environment, and constructive discharge.[3] *Id*. at ¶ 100.

With respect to Plaintiff's claims under the NYSHRL against the individual defendants Rossi and Melilli, Defendant Rossi moves for summary judgment on all of Plaintiff's claims against him under the NYSHRL (which include claims for discrimination and retaliation) based

---

[2] Plaintiff also asserts a separate claim for retaliation against Ferrari Express pursuant to Title VII.  *See* Compl. ¶¶ 95-97.
[3] Plaintiff also asserts a separate claim for retaliation against all Defendants pursuant to NYSHRL.  *See* Compl. ¶¶ 102-104.

upon a recent change in New York State law finding that employees may not be held liable under the NYSHRL.  Def. Rossi Mem. at 8.  While Defendant Melilli has not sought summary judgment on this ground, the analysis here applies to the claims assert against him under the NYSHRL as well.

"Historically, under the NYSHRL, liability for employment discrimination could be imposed on an individual if the individual qualifies as an 'employer.'" *Belyea v. City of Glen Cove,* 20-CV-5675 (MKB), 2023 U.S. Dist. LEXIS 23134, 2023 WL 1929787, at *2 (E.D.N.Y. Feb. 10, 2023) (internal quotation marks omitted) (collecting cases).  However, in *Doe v. Bloomberg L.P.,* 36 N.Y.3d 450, 143 N.Y.S.3d 286, 292, 167 N.E.3d 454 (2021), the New York Court of Appeals held that where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer under the NYSHRL.  *See Bonaffini v. City Univ. of N.Y.*, 2021 U.S. Dist. LEXIS 128398, 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) ("In a recent opinion, however, the New York Court of Appeals clarified that the NYSHRL 'does not render employees liable as individual employers'") (quoting *Doe*, 36 N.Y.3d at 457).  This holding has been interpreted as "provid[ing] for liability for discrimination on the part of employers only." *Nezaj v. PS450 Bar & Restaurant*, No. 22-cv-8494 (PAE), 2024 U.S. Dist. LEXIS 33489, 2024 WL 815996, at *7 (S.D.N.Y. Feb. 27, 2024); *Belyea,* 2023 U.S. Dist. LEXIS 23134.  Individual employees can only be held liable for discrimination under the state statute "on an aider-and-abettor theory." *Baptiste v. City Univ. of New York,* 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023); *see also Bueno v. Eurostars Hotel Co*., No. 21-cv-535 (JGK), 2022 U.S. Dist. LEXIS 4605, 2022 WL 95026, at *7 (S.D.N.Y. Jan 10, 2022) ("[U]nder the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct.").  Individuals can be held liable, however, for claims for retaliation under the NYSHRL.  *See Doyle*

*v. Am. Glory Rest. Corp.*, No. 23 Civ. 7624, 2024 U.S. Dist. LEXIS 63118, at * 24, 2024 WL 1466161 (S.D.N.Y. Apr. 4, 2024) ("[u]nlike the NYSHRL's discrimination provision, which *Doe* has interpreted to apply only to 'employers,' [N.Y. Exec. Law § 296(7)],  applies to 'any person'"); *Nezaj*, 2024 U.S. Dist. LEXIS 33489, at *19-20, 2024 WL 815996 ("although the NYSHRL does not provide for direct liability for discrimination other than by an "employer," it makes it unlawful for "any person" to retaliate); *Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2023 U.S. Dist. LEXIS 154059, 2023 WL 5629295, at *11, *14 (S.D.N.Y. Aug. 31, 2023) (NYSHRL proscribes discrimination by an "employer," retaliation by "any person"). Plaintiff's only response is that *Doe* did not establish an absolute rule shielding employees from individual liability under the NYSHRL.  *See* Pl.  Mem. at 27.  *Doe* and its progeny make clear that an employee may not be held liable for discrimination under the NYSHRL where the employer was a corporate defendant, but, that employee may be subject to liability for retaliation and as an aider and abettor.  Accordingly, the undersigned respectfully recommends that Defendants Rossi and Mellili be granted summary judgment on Plaintiff's claims asserted against them in the Third Cause of Action – sexual harassment pursuant to the NYSHRL. Plaintiff's claims against these Defendants for retaliation and aiding and abetting are discussed in detail below.

A.    **Sexual Harassment - Hostile Work Environment**

Plaintiff asserts a claim for hostile work environment against Ferrari Express pursuant to Title VII and all Defendants under the NYSHRL.  As discussed above, this claim must be limited to claims against her employer – Ferrari Express.  A hostile work environment is one form of disparate treatment that is prohibited under Title VII and the NYSHRL. *See Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001); *see also Feingold v. New York*, 366 F.3d 138, 149, 152 (2d.

Cir. 2004).  To survive a motion for summary judgment, a plaintiff claiming that she was the victim of a hostile work environment must produce evidence from which a reasonable trier of fact could conclude "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co*., 326 F.3d 116, 122 (2d Cir. 2003) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv*., 180 F.3d 426, 436 (2d Cir. 1999).); *see also Riggins v. Town of Berlin*, No. 23-868-cv, 2024 U.S. App. LEXIS 14388, * 2024 WL 2972896 (2d Cir. June 13, 2024) (same).  Actionable sexual harassment under Title VII may include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).  In this context, "New York courts require the same standard of proof for claims brought under the NYHRL as those brought under Title VII, and thus, claims under the NYHRL and under Title VII are essentially identical." *Allen v. Advanced Digital Info. Corp*., 500 F. Supp. 2d 93, 104 (N.D.N.Y. 2007) (citing *Brown v. County of Oneida*, 41 F. Supp. 2d 172, 180 (N.D.N.Y. 1999)).[4]

With respect to Plaintiff's claim of hostile work environment, the Court in *Girardi v. Ferrari Exp., Inc*., No. 20-CV-4298 (VSB), 2023 U.S. Dist. LEXIS 57114, 2023 WL 2744027, at * 5 (S.D.N.Y. Mar. 31, 2023) found that the plaintiff had alleged a claim for hostile work environment based upon facts similar to those alleged here.  In *Girardi*, the plaintiff alleged that an individual defendant repeatedly suggested he and the plaintiff engage in intercourse, despite the fact that she was married.  The Court found that "[t]hese facts suggest harassment 'of such

---

[4] The Court recognizes that in August 2019, the NYSHRL was amended to broaden its liability standards. *See* N.Y. Exec. Law § 300. The conduct alleged here, however, pre-dates the amendment, which does not have retroactive effect. *See McHenry v. Fox News Network*, LLC, 19 CIV. 11294 (PAE), 2020 U.S. Dist. LEXIS 238582, 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020).

quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). The *Girardi* Court pointed out that "[o]ther courts in this circuit have found that alleging a continuous pattern of overt and unwanted solicitation of sexual intercourse can sustain a hostile work environment claim." *Id.* at 2023 U.S. Dist. LEXIS 57114, *18 (citing *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 388 (E.D.N.Y. 2018); *Conforti v. Sunbelt Rentals, Inc.*, 201 F.Supp.3d 278, 305-06 (E.D.N.Y. 2016). Here, the undisputed facts demonstrate that that "Defendant Rossi invited Plaintiff out to his yogurt store, to dinner, and sent her inappropriate text messages, which included asking Plaintiff to kiss him good night, asking Plaintiff to send him a "sexy pic," asking to see Plaintiff's black lace thong, telling Plaintiff that he would "love to fuck [her]," that she would "love having [his] dick inside [her]," that "[he] would [ ] eat [her] pussy until [she] came on [his] face," and that he would "Put [her] in a nice warm bath and lick [her] ass while rubbing [her] clit," among others." Plaintiff's Rule 56.1 Stmt. ¶ 122. While these messages may have started out innocuously they quickly escalated. In addition, Plaintiff has testified that Defendant Rossi made lewd gestures and comments to Plaintiff on several other occasions while in the office. *See, e.g.,* Pl. Rule 56.1 Stmt. ¶¶ 57, 58, 61, 63, 71, 74, 75, 79, 81, 94. Defendant Rossi has denied making these gestures and comments. Plaintiff also points out comments of a sexual nature by Defendant Rossi, Defendant Melilli and Yesenia Ruiz-Goris. See, e.g., made regarding [add] in her presence. *See, e.g.,* Pl. Rule 56.1 Stmt. ¶¶ 67. 69, 70. Defendants dispute each of these statements as well.

"[T]he Second Circuit has held that a plaintiff's burden to establish a material issue of fact with respect to a 'hostile workplace' claim is not great." *Carter v. New York*, 310 F. Supp. 2d 468, 476 (N.D.N.Y. 2004) (citing *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d

426, 439 (2d Cir.1999)). In fact, "[t]he Second Circuit has pointed out that 'a jury made up of a cross-section of our...communities provides the appropriate institution for deciding whether borderline situations should be characterized as sexual harassment.'" *Michaels v. Attorney Gen., Dep't of Justice*, 544 F. Supp. 2d 131, 137-38 (D. Conn. 2008) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir.1998), abrogated on other grounds by *Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). Thus, viewing the evidence in the light most favorable to the non-moving party, a genuine factual dispute exists as to whether Defendant Rossi's conduct created an environment that was objectively hostile or abusive. *See Burford*, 321 F. Supp. 2d at 363 (finding sufficient evidence of hostile work environment for summary judgment where "Plaintiff has alleged a long series of harassing acts by Field, including comments he made about Plaintiff's anatomy, insinuating comments about proposed sexual activity between Plaintiff and Field, unwanted physical contact by Field, and attempts by Field to look down Plaintiff's shirt."). Here, the undisputed facts suggest conduct which could support a claim for sexual harassment, and when combined with the disputed facts that can be presented to the jury, Plaintiff has presented a prima facie case of hostile work environment.

However, to hold an employer liable for a hostile work environment under Title VII, "federal law requires the plaintiff to show 'a specific basis for imputing the conduct creating the hostile work environment to the employer.'" *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (internal quotation marks omitted)); *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (a plaintiff must establish a "specific basis for imputing the conduct creating the hostile work environment to the employer"). "Two such bases exist: strict vicarious liability if an employer's supervisor has

created the hostile environment; and negligence if a co-worker who is not a supervisor has created the environment, and the employer, upon becoming aware of the misconduct fails to remedy it." *Id.*

Plaintiff argues that Defendant Ferrari Express is strictly liable for the actions of Defendant Rossi because he was Plaintiff's supervisor, and he invoked his actual and/or apparent authority to accomplish the harassment. Pl. Mem. at 15. "[A]n employee is a supervisor only 'when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."'" *Bentley*, 935 F.3d at 91 (quoting *Vance v. Ball State University*, 570 U.S. 421, 431, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013)). "The ability to direct another employee's tasks is simply not sufficient' to make one a supervisor." *Id*. "[A]n employer will be liable if the supervisor uses 'his actual or apparent authority to further the harassment, or if [the supervisor] was otherwise aided in accomplishing the harassment by the existence of the agency relationship.'" *Karibian v. Columbia Univ*., 14 F.3d 773, 780 (2d Cir. 1994)). "As a general rule, apparent authority is relevant where the agent purports to exercise a power which he or she does not have." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). "If, in the unusual case, it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one." *Id*.; *see, e.g, Fantazzi v. Temple Univ. Hosp*., No. 00-CV-4175, 2003 U.S. Dist. LEXIS 7693, at *17, 2003 WL 23167247 (E.D. Pa. Apr. 10, 2003) (issue of fact created where other employees also believed individual was supervisor). Additionally, a triable issue may be presented as to whether the individual can be considered a de facto decisionmaker in view of his

influence on the employers' decision making.  *Morris v. N.Y.C. Health & Hosp. Corp.*, No. 09-CV-5692 (MKB) (ST), 2018 U.S. Dist. LEXIS 136621 (E.D.N.Y. Aug. 10, 2018) (citing *Vance*, 570 U.S. at 447 ("employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies")).

Defendants argue, without citation to evidence that "at all relevant times, Rossi was a member of Ferrari Express' Import Department, and that, at times, he may have directed Plaintiff's tasks, but this is not enough for him to be a supervisor. Defendant Rossi indisputably had no authority to hire, fire, promote or fail to promote, reassign with different responsibilities, or the ability to cause a significant change in Plaintiff's benefits."  Ferrari Defs. Reply Mem. at 7.  Plaintiff, on the other hand, has presented evidence that she was interviewed by Defendant Rossi, that Defendant Rossi offered her the Import Clerk position, and that Defendant Rossi was her manager.  Pl. Rule 56.1 Stmt. ¶ 134.  Defendant Rossi testified at his deposition that he was "in charge" of the Import Department; supervised all staff within the department; trained employees (including Plaintiff); assigned daily tasks; reprimanded employees; and he interacted with Plaintiff on a daily basis.  *Id*. at ¶ 135. The Ferrari Defendants dispute this statement of fact, citing the deposition of Ferrari Express president, Dario Ferrari indicating that hiring, firing, reprimands, were assigned to HR and Dario Ferrari, however, Defendant Rossi's testimony supports Plaintiff's statement. There were also two instances during Defendant Rossi's deposition when he specifically described his relationship with Plaintiff as one between "manager [and] employee" and "strictly a manager/employee professional relationship."  *Id.* at ¶ 137.  Additionally, Dolkas Cepeda, another employee who worked in the Import Department, testified that she also reported to Defendant Rossi, that Defendant Rossi was the supervisor of the department, that she had been written up by Defendant Rossi, and that Defendant Rossi had

once suspended her.  *Id*. at ¶ 138.  Defendants dispute this testimony, claiming that the write up

and suspension came for the HR department.  However, the testimony indicates both HR and

Defendant Rossi participated in both events.  *See* Bracero Dec. Ex. I at 13, 16-18, and 26.

Similarly, Salvina Marchisello, an Entry Clerk in the Import Department, testified that Defendant

Rossi was the manager of the department.  Pl. Rule 56.1 Stmt. ¶ 139.  Likewise, Netta Cohen-

Laureano and Yesenia Ruiz-Goris also testified that Defendant Rossi managed the Import

Department.  *Id.* at ¶ 140.  Defendant Melilli further testified that Defendant Rossi supervised the

Import Department's day-to-day activities and was Plaintiff's "direct supervisor." *Id*. at ¶ 142.

Defendants, on the other hand claim that "Defendant Rossi indisputably had no authority

to hire, fire, promote or fail to promote, reassign with different responsibilities, or the ability to

cause a significant change in Plaintiff's benefits."  Ferrari Defs. Reply Mem. at 7.  In support of

this position, Defendants cite deposition testimony of Dario Ferrari, Ferrari Express president,

Defendant Rossi and other members of HR at Ferrari Express. While both the Ferrari Defendants

and Defendant Rossi make statements to that effect in their Rule 56.1 Statements, *see, e.g.,*

Ferrari Defs. Rule 56.1 ¶¶ 57-61, Def. Rossi Rule 56.1 Stmt. ¶¶ 10-11, each time the statement is

disputed by Plaintiff with reference to the facts as described above.  The relevant inquiry is

whether Defendant Rossi had actual or apparent authority to alter the terms of Plaintiff's

employment.  *See Karibian v. Columbia University*, 14 F.3d 773, 777 (2d Cir. 1994), cert.

denied, 512 U.S. 1213, 114 S. Ct. 2693, 129 L. Ed. 2d 824 (1994).  Defendants have not

addressed Plaintiff's claim of apparent authority.

Despite Defendant Ferrari Express's statement that Defendant lacked actual authority to

impact the terms of Plaintiff's employment "[w]hether a plaintiff is reasonable in believing that a

purported supervisor had the apparent authority to do what he promised 'is a question best left

for a jury.'" *Equal Emp. Opportunity Comm'n v. Draper Dev. LLC,* No. 15-CV-877, 2018 U.S. Dist. LEXIS 115124, at * 2018 WL 3384427 (N.D.N.Y. July 11, 2018) (quoting DeWitt v. Lieberman, 48 F. Supp. 2d 280, 290 (S.D.N.Y. 1999)).  Here, Defendant Rossi was involved in Plaintiff's hiring, held himself out as Plaintiff's manager and sent a text to Plaintiff stating "Your lack of communication with me is going to result in a write up and 2 day suspension with no pay." *Id.* at ¶ 116.  "The hallmark of the tangible employment action thus used to identify a supervisor is its potential 'to inflict direct economic injury.'" *Bentley*, 935 F.3d at 91 (quoting *Vance*, 570 U.S. at 440).  Defendant Rossi's statement that he intended to assess a two-day suspension without pay constitutes a direct economic injury.  The question of whether Plaintiff was reasonable in believing he had the authority to do so is a question of fact.

The Court's inquiry, however, does not end here.  "Even if there is sufficient evidence of a hostile work environment to survive summary judgment, summary judgment may be warranted under the *Faragher/Ellerth* affirmative defense where the undisputed facts demonstrate that the defense exists and, therefore, no liability should be imputed to the employer." *EEOC v. Thomas Dodge Corp.*, No. 07-CV-00988 (JFB) (AKT), 2009 U.S. Dist. LEXIS 24838,  2009 WL 803150 (E.D.N.Y. Mar. 25, 2009).  Here, Defendants assert the Faragher/Ellerth affirmative defense in response to Plaintiff's sexual harassment claims. Ferarri Defs. Mem. at 11.  As explained in *Ellerth*, "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages....[that] comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise...." *Ellerth,* 524 U.S. at 765. "No affirmative defense is available, however, when the supervisor's

harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *Id*.

Plaintiff argues that there was a tangible employment action in that she was forced to work additional overtime, forced to email a daily task completion list and box files[5] and that she was constructively discharges.  Pl. Mem. at 18.   With respect to Plaintiff's claim that she was constructively discharged, "a constructive discharge, even if established by the plaintiff, does not amount to a tangible employment action in the context of a *Faragher/Ellerth* defense." *Pugni v. Reader's Digest Ass'n*, No. 05-CV-8026, 2007 U.S. Dist. LEXIS 26284, at *49, 2007 WL 1087183 (S.D.N.Y. Apr. 9, 2007) (citing *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 294-95 (2d Cir. 1999), overruled on other grounds by *In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir. 2006))).   An employee sustains a tangible employment action, or adverse employment action if he "endures a materially adverse change in the terms and conditions of employment.... An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation and quotation marks omitted). There is "no brightline rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination." *Davis v. N.Y.C. Dep't of Educ*., 804 F.3d 231, 235 (2d Cir. 2015) (citing *Richardson v. N.Y. State Dep't of Corr. Serv*., 180 F.3d 426, 437, 446 (2d Cir.

---

[5] Plaintiff's allegation that "as another example of the tangible employment actions taken against her, Defendant Rossi required Plaintiff to email him a daily task completion list and "box" files, assignments she never had to do previously, and which no other employee in the Import Department was required to do," Pl. Ferrari Opp. at 17, is rejected outright, because conduct that is a "mere inconvenience" does not rise to the level of an adverse employment action.  *Parsons v. JPMorgan Chase Bank, N.A*., No. 16-CV-0408, 2018 U.S. Dist. LEXIS 173056, 2018 WL 4861379, at *7 (E.D.N.Y. Sept. 30, 2018) (quoting *Sanders v. N.Y. City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir. 2004)). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks and citations omitted).

1999), abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (alteration, citation, and internal quotation marks omitted). Generally, "the denial of opportunity to work overtime or earn greater responsibility may be considered sufficiently adverse to support a discrimination claim." *Roache v. Long Island R.R.,* 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020); *see also Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (noting that plaintiff's allegation that "she was not allowed to earn overtime pay" satisfied the adverse employment action prong of a prima facie Title VII case). Here, however, Plaintiff claims that rather than being denied overtime, she was required to work overtime which "materially changed the terms and conditions of her employment." Pl. Mem. at 18. According to Plaintiff she was never informed overtime would be required. At her deposition. Plaintiff testified that she was never informed by Defendant Rossi, Defendant Melilli, or anyone at Defendant Ferrari Express that overtime was mandatory when hired, only that it was available. Bracero Dec. Ex. B at 32-33. Plaintiff also testified that she informed Defendant Rossi and Defendant Melilli that she was a single mother during her interview, explained that her parenting responsibilities could prevent her from working overtime if asked to, and that neither Defendant Rossi nor Defendant Melilli objected to the same. Bracero Dec. Ex. B at 32. Defendants, however, claim that all the employees of the department worked overtime when needed including Netta Cohen, Dolkas Cepeda, Plaintiff, Salvina Marchisello, Tonia Perkins and Charlie to finalize the job of the department. Lamura Dec. Ex. L, 22:20-25. Defendants also argue that

24

Plaintiff was informed by both Ruiz and Defendant Melilli that employees in the import department were required to work overtime when necessary.  Lamura Dec. Ex. A, 152:17- 21. Defendants further claim that "Ferrari never required Dougherty to work excessive overtime nor was her overtime greater than that of her co-workers," citing time records of Ferrari Express employees.  Ferrari Defs. Reply Mem. at 8; Ferrari Defs. Resp to Pl. Rule 6.1 Stmt. ¶ 100.

According to Plaintiff, "Defendants materially altered the terms, conditions, and benefits of her employment by requiring her to work any overtime in retaliation for rejecting Defendant Rossi's sexual advances."  Pl. Resp. to 100.  Plaintiff states that the requirement of overtime was in response to Plaintiff's rejection of Defendant Rossi's attempted kiss in May 2018.  Pl. Rule 56.1 Stmt. ¶ 88.  Plaintiff claims, relying upon her own testimony, that she made clear during her interview that she would be unavailable for overtime.  Bracero Dec. Ex B at 32.  Thus, there is a material issue of fact regarding the terms of her employment which cannot be resolved on summary judgment. Plaintiff contends she was told she would not have to work overtime, while Defendants argue overtime was a required part of the job, creating a question of fact exist as to whether the *Faragher/Ellerth* affirmative defense is available to Defendants.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment be denied because the question of Defendant Rossi's authority as well as issues surrounding the requirement that Plaintiff work overtime should be decided by a jury.[6]

B.    **Sexual Harassment - Quid Pro Quo Harassment**

---

[6] Because the Court finds the question of strict liability must be decided by the jury, the undersigned does not reach Defendants' argument with regard to the second prong of the test for imputing conduct to the employer to support a claim for sexual harassment, i.e., whether Defendant was negligent in failing to remedy a hostile environment created by a co-worker who is not a supervisor.  However, the Court notes that the parties disagree with regard to Defendant Melilli's knowledge of the behavior of Defendant Rossi.  *See, e.g.,* Ferrari Defs. Resp. to Plaintiff's Rule 56.1 Stmt. ¶¶ 81-82.

Plaintiff also asserts a claim for quid pro quo harassment against all Defendants under the NYSHRL.[7]  As discussed above, this claim must be limited to claims against her employer – Ferrari Express.  Claims brought pursuant to Title VII and NYSHRL for quid pro quo sexual harassment are evaluated under the burden-shifting standard set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668.[8]  *See To Man Pang v. Anthony Ye*, No. 23-713-cv, 2024 U.S. App. LEXIS 7205, 2024 WL 1298553 (2d Cir. Mar. 27, 2024); *Clarke v. Pacifica Found.*, No. 07-cv-4605, 2011 U.S. Dist. LEXIS 105468, at *27, 2011 WL 4356085, at *8 (E.D.N.Y. Sept. 16, 2011).  Therefore, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell Douglas* framework and its presumptions and burdens disappear, and, thus,  (3) the burden shifts back to the plaintiff to show that the employer's reason is pretextual and that it masks the employer's true discriminatory reason. *See Patterson v. City of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he

---

[7] Plaintiff has not expressly stated a claim for quid pro quo harassment under Title VII, however, "the Second Circuit has concluded that 'it is most appropriate ... to look to the substance of the alleged misconduct of which the plaintiff complains rather than the terms used to describe it.'"  *Maiurano v. Cantor Fitzgerald Sec.,* No. 19-CV-10042, 2021 U.S. Dist. LEXIS 3762, at *9, 2021 WL 76410 (S.D.N.Y. Jan. 8, 2021); *LaMarca v. City of Niagara Falls,* No. 13-CV-00970-WMS-JJM, 2016 U.S. Dist. LEXIS 18602, 2016 WL 8674161, at *11 (W.D.N.Y. Feb. 12, 2016) ("the Second Circuit has rejected 'a rigid rule that would require plaintiffs to use the words quid pro quo or hostile work environment[,][] since these terms are judicially created for analytical purposes, not distinctions in the statute itself").  For purposes of completeness, the undersigned has considered Plaintiff's quid pro quo claim under both statutes.

[8] Unlike quid pro quo claims "'hostile work environment claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test.'" *Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, No. 1:20-cv-01373 (AMN/CFH), 2024 U.S. Dist. LEXIS 57267, 2024 WL 1345345, at *11 (N.D.N.Y. Mar. 29, 2024) (quoting *McNulty v. Cty. of Warren New York*, No. 1:16-CV-843 (NAM/DJS), 2019 U.S. Dist. LEXIS 36591, 2019 WL 1080877, at *9 n.2 (N.D.N.Y. Mar. 7, 2019)).

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see Gorzynski*, 596 F.3d at 107.

The Ferrari Defendants argue that Plaintiff has not established a prima facia case of quid pro quo harassment because (1) Plaintiff has failed to demonstrate that Defendant Rossi had the authority to "authority to affect any of the benefits or privileges of [Plaintiff's] employment", and (2) "there was no significant change to any tangible aspect of [Plaintiff's] employment.  In fact, Ferrari Express took no action whatsoever in relation to her employment status, [Plaintiff] was never reassigned to any position with either significantly or slightly different responsibilities, nor was any action taken impacting her employment benefits, she was never refused a promotion, nor she was either directly or constructively fired."  Ferrari Defs. Mem. at 4-6.

"To establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Fitzgerald v. Henderson*, 251 F.3d 345, 356 (2d Cir. 2001) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994)).  "An employee must show a tangible employment action, i.e., that an explicit alteration in the terms or conditions of employment resulted from refusal to submit to a supervisor's sexual advances." *Rivera v. New York City Dep't of Corr.*, 951 F. Supp. 2d 391, 399-400 (E.D.N.Y. 2013) (citing *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 604 (2d Cir. 2006)). "The relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of

27

sexual advances." *Karibian*, 14 F.3d at 778. "The requirements to establish a prima facie case are 'minimal,' and a plaintiff's burden is therefore 'not onerous.'" *Bucalo v. Shelter Island Union Free Sch. Dist.,* 691 F.3d 119, 128 (2d Cir. 2012) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Defendants argue that Plaintiff has failed to demonstrate she suffered a tangible employment action.  Ferrari Defs. Mem. at 4.  As discussed above, an employee sustains a tangible employment action, or adverse employment action if he "endures a materially adverse change in the terms and conditions of employment.... An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation and quotation marks omitted).

According to Plaintiff, she has satisfied this element but demonstrating she was required to work additional overtime and that she was constructively discharged.[9] Pl. Ferrari Opp. at 17-18.  "[A] constructive discharge is not a sufficiently tangible employment action to serve as the basis for a quid pro quo claim." *Girardi v. Ferrari Exp., Inc*., 2023 U.S. Dist. LEXIS 57114, 2023 WL 2744027, at * 5 (S.D.N.Y. Mar. 31, 2023) ("Although the Second Circuit has yet to definitively address the issue, other circuits have held that a constructive discharge is not a sufficiently tangible employment action to serve as the basis for a quid pro quo cause of action."); *Clarke v. Pacifica Found*., No. 07 CV 4605 FB, 2011 U.S. Dist. LEXIS 105468, 2011 WL 4356085, at *13 (E.D.N.Y. Sept. 16, 2011); *see also, e.g., Rogers v. City County Health*

---

[9] Plaintiff also contends that "as another example of the tangible employment actions taken against her, Defendant Rossi required Plaintiff to email him a daily task completion list and "box" files, assignments she never had to do previously, and which no other employee in the Import Department was required to do." Pl. Ferrari Opp. at 17.  As discussed above, these allegations may be rejected outright, because conduct that is a "mere inconvenience" does not rise to the level of an adverse employment action.  *Parsons,* 2018 U.S. Dist. LEXIS 173056, 2018 WL 4861379, at *7 (quoting *Sanders*, 361 F.3d at 755).

*Dep't of Okla. County*, 30 Fed. Appx. 883, 888 n. 2 (10th Cir.2002) (holding that a Plaintiff "cannot survive summary judgment on her quid pro quo claim based on a constructive discharge theory."); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 28 (3d Cir. 1997) (holding that "constructive discharge cannot form the basis for quid pro quo sexual harassment").  Thus, just as with respect to Defendants' *Faragher/Ellerth* affirmative defense, Plaintiff must demonstrate that Defendant Rossi's assignment of overtime to Plaintiff was a tangible employment action, linked to Plaintiff's rejection of his advances.  Because this Court has already determined that questions of fact exist with respect to the overtime requirements of Plaintiff's position, the undersigned respectfully recommends that the Ferrari Defendants' motion for summary judgment on Plaintiff's claim of quid pro quo sexual harassment be denied.

### C.    Title VII - Constructive Discharge

Plaintiff asserts a claim for constructive discharge against Ferrari Express pursuant to Title VII and all Defendants under the NYSHRL.  As discussed above, this claim must be limited to claims against her employer – Ferrari Express.  Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir. 1996).  For purposes of Title VII, a constructive discharge occurs when "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Green v. Brennan*, 578 U.S. 547, 555, 136

S. Ct. 1769, 195 L. Ed. 2d 44 (2016).  "The standard for constructive discharge is a demanding one because it 'cannot be proven merely by evidence that an employee ... preferred not to continue working for that employer ... [or that] the employee's working conditions were difficult or unpleasant.'" *Madray v. Long Island Univ.,* 789 F. Supp. 2d 403, 409-10 (E.D.N.Y. 2011) (quoting *Spence v. Maryland Cas. Co*., 995 F.2d 1147, 1156 (2d Cir. 1993)).  Rather, the plaintiff must present evidence "(1) that the employer acted deliberately or intentionally in bringing about the complained of work conditions, and (2) that the conditions were 'intolerable.'" *Id.* (citing *Petrosino v. Bell Atl*., 385 F.3d 210, 229 (2d Cir. 2004)). "[A] 'plaintiff may prove a constructive discharge by establishing that [his] employer, rather than acting directly, deliberately made [his] working conditions so intolerable that [he] was forced into an involuntary resignation, i.e., so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Dowrich-Weeks v. Cooper Square Realty, Inc*., 535 Fed. Appx. 9, 12 (2d Cir. 2013) (quotations omitted); *see also Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011).  The standard for a constructive discharge claim "is higher than the standard for establishing a hostile work environment." *Fincher v. Depository Tr. & Clearing Corp.,* 604 F.3d 712, 725 (2d Cir. 2010).

Defendants contend that Plaintiff's claim of constructive discharge claim fails because, even assuming she could prove the other elements of the claim, she has insufficient evidence to support a finding of deliberateness or intent on the part of Ferrari Express and Defendant Melilli. Ferrari Defs. Mem. at 10.  In response, Plaintiff offers no evidence supporting a conclusion that Defendant Ferrari Express directly and deliberately created to the intolerable working conditions to force Plaintiff's resignation.  Indeed, immediately upon her resignation an investigation was conducted and Plaintiff was offered a position in a safe environment, undermining and claim of

deliberateness. *See, e.g., Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003) ("It is uncontested that once Otis officials were made aware of Mack's complaints, they immediately began an investigation. They arranged a meeting with Mack and offered to do precisely what she had asked, to transfer her to a place elsewhere in midtown Manhattan -- Rockefeller Center -- where she would be beyond Connolly's power. Mack simply refused the transfer and failed to return to work. As the district court concluded, no reasonable fact finder could construe this as a constructive discharge"). Accordingly, the undersigned respectfully recommends that the Ferrari Defendants' motion for summary judgment on Plaintiff's claim of constructive discharge be granted.

### III. Retaliation under Title VII and NYSHRL

In addition to Plaintiff's claims of discrimination, Plaintiff also asserts a claim for retaliation against Ferrari Express pursuant to Title VII and all Defendants under the NYSHRL. Title VII makes it unlawful "for an employer to discriminate against any . . . employee[] . . . because [the employee] has opposed any practice made an unlawful employment practice . . ., or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . ." 42 U.S.C. § 2000e-3(a). In light of the age of this action, the standards for evaluating retaliation claims remain the same under Title VII and the NYSHRL.'" *Setty,* 2018 U.S. Dist. LEXIS 213878, 2018 WL 8415414, at *9 (quoting *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 454 (E.D.N.Y. 2013)). On a motion for summary judgment, retaliation claims are analyzed under the three-step burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). "First, the plaintiff must establish a prima facie case of

retaliation by showing: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Id.* (quoting *Jute*, 420 F.3d at 173). The prima facia burden is "de minimis" and the question for the Court is solely whether the plaintiff's admissible evidence would be sufficient to infer retaliatory motive. *See id.*

The Ferrari Defendants argue that Plaintiff has failed to establish a prima facia case of retaliation because Plaintiff did not engage in a protected activity.  Ferrari Defs. Mem. at 14.  As relevant here "a plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII."  *Davis v. NYS Dep't of Corr. Attica Corr. Facility*, 110 F.Supp.3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012)).  Protected activities can also include "'informal protests of discriminatory employment practices, including making complaints to management' provided that they are 'sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.'" *Arkorful v. N.Y.C. Dept. of Educ.*, 2024 U.S. Dist. LEXIS 14270, 2024 WL 298999, at *14 (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012)).

Plaintiff contends that she engaged in protected activity by rejecting Defendant Rossi's advances.  Pl. Mem. at 23-24.  "The Second Circuit has not decided whether rejection of a supervisor or employer's sexual advances constitutes a protected activity, but the majority of courts to face the issue have agreed that it does." *Campo v. City of New York*, No. 19CV04364NGGSJB, 2022 U.S. Dist. LEXIS 60288, 2022 WL 970730, at *9 (E.D.N.Y. Mar. 31, 2022) (collecting cases).  However, "courts have dismissed such claims where the pleading

failed to plausibly allege that the plaintiff's 'resistance' to the alleged sexual advance communicated opposition to sexual harassment." *Reed v. Fortive Corp.*, No. 21-CV-6312 CJS, 2023 U.S. Dist. LEXIS 118954, 2023 WL 4457908, at *14 (W.D.N.Y. July 11, 2023) ("[T]o find that Plaintiff engaged in protected activity that was known to [defendant], the Court must find that the Amended Complaint plausibly alleges both that Plaintiff had a good faith, objectively reasonable belief that McCauley's alleged sexual advances . . . violated Title VII and the NYSHRL, and that she communicated such belief to McCauley in a manner that sufficiently indicated she was opposing sexual harassment.")

In *Brauer v. MXD Grp., Inc.*, No. 3:17-CV-2131 (VLB), 2019 U.S. Dist. LEXIS 149983, 2019 WL 4192181, at *3 (D. Conn. Sept. 4, 2019), the Court pointed out that

> Plaintiff does not claim to have asked him not to make comments about her appearance or call her "sunshine." . . . She only claims to have told Martin she would not mix business with pleasure by having dinner with him. . . . Plaintiff does not suggest that she indicated that she was uncomfortable with the invitation, that it was unwelcome, or that she took offense to it. Plaintiff's account of the interaction does not indicate that her declination of his invitation was, or could have been interpreted as, a complaint against him having shown interest in her because of her gender.

2019 U.S. Dist. LEXIS 149983, at * 15.  The Court held that Plaintiff's rejection of Martin's invitation did not constitute protected activity because "[t]he rejection here does not come close to resembling a complaint, formal or informal, against sexual harassment. Plaintiff's declination simply clarified what she intended to convey when she offered Martin emotional support. It is not akin to an opposition of unlawful workplace discrimination and does not put the employer on notice of the improper conduct."  *Id*. at 2019 U.S. Dist. LEXIS 149983, at * 16 (citing *Lincoln v. St. Francis Hosp. & Med. Ctr.,* Civ. No. 3:03CV01418 (AWT), 2006 U.S. Dist. LEXIS 59917, 2006 WL 2475029, at * (D. Conn. Aug. 24, 2006) ("While there are no magic words that must be

used when complaining about a supervisor, in order to be protected activity the complaint must

put the employer on notice that the complainant believes that discrimination is occurring")).

Similarly, here, Plaintiff has not adduced any facts which indicate she believed

discrimination was occurring.  She simply rejected Defendant Rossi's invitations and did not

respond at all as his requests became more explicit.  In Plaintiff's own words, she complained to

Defendant Rossi in the following manner:

> A documented example of Plaintiff objecting and/or rejecting Defendant Rossi's sexual advances occurred on May 23, 2018, when Defendant Rossi texted Plaintiff, "u wanna kiss me goodnight?," and Plaintiff replied, "No your office light was on." (Bracero Decl. Ex. K, Dougherty0019). Similarly, on May 29, 2018, when Defendant Rossi texted Plaintiff, "u miss me this weekend," Plaintiff replied, "NO!" Bracero Decl. Ex. K, Dougherty0019). Likewise, on September 18, 2018, when Defendant Rossi texted Plaintiff, "You look really good today[.] Are you trying to temp me to attack you?," Plaintiff replied, "Stop it!" (Bracero Decl. Ex. K, Dougherty0026). As another example, on November 7, 2018, when Defendant Rossi asked Plaintiff to send him a "sexy pic," Plaintiff responded, "No way … I'm not doing that." (Bracero Decl. Ex. K, Dougherty0029). Additionally, during her deposition, Plaintiff testified that she complained and/or objected to Defendant Rossi's sexual advances in the workplace by reminding him that he was married, "remind[ing] him that [he was her] boss [and telling] that it [was] not appropriate to talk to [her] like that," telling Defendant Rossi that she "was not interested," and by telling Defendant Rossi to "stop it." (Bracero Decl. Ex. A at 70, Bracero Decl. Ex. B at 196 and 198-199).

None of these actions put Defendant Rossi, or any of the Defendants on notice that Plaintiff was

complaining of discrimination.   Accordingly, the undersigned respectfully recommends that

Defendants motions for summary judgment with respect to Plaintiff's claim of retaliation be

granted.

## IV.    Plaintiff's Aiding and Abetting Claim

Finally, Plaintiff asserts a cause of action for aiding and abetting discrimination and

retaliation as against all Defendants.  Compl. ¶¶ 105-107.  The Ferrari Defendants argue that to

the extent Plaintiff's claims for discrimination and retaliation are dismissed Plaintiff's claim for

aiding and abetting should be dismissed as well.  However, "before an individual may be

considered an aider and abettor," liability "must first be established as to the employer." *Torres v. New York Methodist Hospital*, No. 15-cv-1264 (PKC) (PK), 2016 U.S. Dist. LEXIS 2365, 2016 WL 3561705 at *12 (E.D.N.Y. Jan. 7, 2016).  Since this Court has reported that questions of fact exist with respect to Plaintiff's claims of discrimination, the undersigned further recommends that the Ferrari Defendants' motion for summary judgment with respect to Plaintiff's claim of aiding and abetting be denied.   On the other hand, since the undersigned has reported that no questions of fact exist with respect to Plaintiff's claim of retaliation, it is recommended that Defendants' motion for summary judgment with respect to Plaintiff's claim of aiding and abetting the retaliation claim be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  Any requests for an extension of time for filing objections must be directed to Judge Azrack prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants*

*Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:  Central Islip, New York
        August 15, 2024

                              _____/s_____
                              ARLENE R. LINDSAY
                              United States Magistrate Judge

36